IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLON CARTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BEN VARNER, et al. | : | NO. 02-4381 |

### REPORT AND RECOMMENDATION

**JACOB P. HART**
**UNITED STATES MAGISTRATE JUDGE**           February    , 2003

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by an individual currently incarcerated at the State Correctional Institution - Smithfield at Huntingdon, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

**FACTS AND PROCEDURAL HISTORY:**

On December 5, 1996, after a jury trial before the Honorable Gary Glazer, Carter was convicted of first degree murder and possession of an instrument of crime, (PIC). The charges arose from the June 1, 1995 shooting of William Fields in the 500 block of South 60th Street in Philadelphia. Fields later died as a result of the multiple gunshot wounds he suffered. Judge Glazer sentenced Carter to life imprisonment for the murder conviction and a consecutive sentence of 12 - 24 months' imprisonment for the PIC conviction.

On direct appeal, Carter presented the following claims:

1. Counsel was ineffective for failing to object to a portion of the Commonwealth's opening statement and a witness's testimony that Carter was involved in selling drugs;

2. Counsel had no reasonable basis for choosing the particular defense course he chose;

3. The trial court improperly dismissed a juror during trial;

    4. The trial court erred in allowing a witness to testify regarding a threat to his life if he testified against Carter;

    5. The trial court erred in failing to grant a mistrial after the prosecution asked a witness about Carter's prior firearms conviction.

On January 26, 1999, the Superior Court affirmed the judgment of sentence. <u>Commonwealth v. Carter</u>, 3078 Phila. 1997. Carter did not seek discretionary review in the Pennsylvania Supreme Court.

On January 13, 2000, Carter filed a <u>pro se</u> petition pursuant to Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa.C.S.A. §§ 9541-9551. Appointed counsel filed an amended petition, claiming:

    1. Trial counsel was ineffective for failing to object to the court's charge on reasonable doubt;
    2. Trial counsel was ineffective for failing to call Officer Mathis as an exculpatory witness.

On January 30, 2001, Judge Glazer denied the petition. On appeal, the Superior Court affirmed the decision of the PCRA Court on January 9, 2002. <u>Commonwealth v. Carter</u>, 578 EDA 2001. The Supreme Court of Pennsylvania denied allocatur on June 19, 2002. <u>Commonwealth v. Carter</u>, 803 A.2d 733 (Pa. 2002)(Table).

On July 1, 2002, Carter filed this petition for habeas corpus, claiming:

    1. The court erred in permitting evidence of Carter's other crimes;

    2. The court erred in permitting evidence of prior inadmissible convictions;

    3. The court erred in permitting evidence of alleged threats made against a Commonwealth witness;

    4. The court erred in dismissing a juror during trial;

    5. Trial counsel/appellate counsel were ineffective for failing to object to/preserve the

> issue of the court's charge on reasonable doubt;

6. Trial counsel/appellate counsel were ineffective for failing to call/preserve the issue of the failure to call Officer Mattis [sic] to undermine the testimony of Commonwealth witness, Archie Moore.

**DISCUSSION:**

An application for a writ of habeas corpus can only be granted if "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Here, Carter properly presented his claims of appellate counsel's ineffectiveness to the Pennsylvania appellate courts. They are, therefore, ripe for review. The remainder of Carter's claims, however, are procedurally defaulted.

When the petitioner's failure to comply with state procedural rules results in his inability to properly present his claim in the state courts, the claim is considered procedurally defaulted.

> [I]f a defendant fails to comply with state procedural rules and is barred from litigating a particular constitutional claim in state court, the claim can be considered on federal habeas only if the defendant shows cause for the default and actual prejudice resulting therefrom.

Teague v. Lane, 489 U.S. 288, 308 (1988)(plurality opinion); see also Wainwright v. Sykes, 433 U.S. 72 (1976). Here, Carter's failure to seek discretionary review from the Pennsylvania Supreme Court when the Superior Court denied his direct appeal results in a default of the issues presented in that appeal.[1] At this point, Carter has no avenue through which to present these claims to the state supreme court. Any attempt to file a PCRA petition would result in a finding

---

[1] Pennsylvania Supreme Court Administrative Rule 218, which relieves a habeas petition of the requirement that he file for allocatur to exhaust his state court remedies, was not adopted until May 9, 2000. The Third Circuit has held that this rule does not apply retroactively. See Wenger v. Frank, 266 F.3d 218 (3d Cir. 2001). Hence, at the time of Carter's direct appeal, he was required to file for allocatur to exhaust his claims.

that the petition was untimely and, in any event, the claims presented have been previously litigated. See 42 Pa.C.S.A. §§ 9545(b); 9544(a). Therefore, we will only consider the claims upon a showing of cause and prejudice, or a fundamental miscarriage of justice. Carter has failed to allege, let alone establish either. He has failed to explain his failure to seek allocatur and has not supplemented his claims with a "colorable showing of factual innocence" required to establish a fundamental miscarriage of justice. McCleskey v. Zant, 499 U.S. 467, 495 (1991)(citing Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986)). Therefore, we will not address Carter's first four claims of error.

Carter's fifth and sixth claims include layered claims of ineffective assistance of counsel. To the extent Carter alleges trial counsel's ineffectiveness, the claims are procedurally defaulted. The Superior Court refused to address the merits of the allegations of trial counsel's ineffectiveness because Carter failed to present these claims on direct appeal.[2] However, since a discussion of appellate counsel's ineffectiveness for failing to present claims of trial counsel's ineffectiveness necessarily requires a discussion of the underlying issues of error, we will not stand on ceremony.

In his fifth claim, Carter alleges that counsel was ineffective for failing to challenge the court's instruction on reasonable doubt. The state courts found that there was no basis upon which counsel could object because the charge was correct. Commonwealth v. Carter, 578 EDA 2001, at 6-7. Habeas relief is available only if the state court's determination results in a decision

---

[2]Ordinarily, the same counsel representing the defendant at trial represents him on direct appeal. Hence, the courts do not expect direct appellate counsel to allege his own ineffectiveness. However, in Carter's case, he obtained new counsel on direct appeal. Hence, his direct appeal was the first opportunity he had to allege trial counsel's ineffectiveness and a failure to do so results in a waiver of the claims. Commonwealth v. Carter, 578 EDA 2001, at 3

which is "contrary to" or involved "an unreasonable application" of clearly established federal law, or was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d). Federal law dictates that a jury instruction is unconstitutional if there is a reasonable likelihood that the jury understood it to allow conviction without proof beyond a reasonable doubt. Tyler v. Cain, 533 U.S. 656 (2001)(citing Cage v. Louisiana, 498 U.S. 39 (1990)); Boyde v. California, 494 U.S. 370, 380 (1990). In making this decision, the federal court must look at the jury instruction as a whole. Cupp v. Naughton, 414 U.S. 141, 147 (1991).

During its charge to the jury, the court instructed them as follows:

A reasonable doubt is the type of doubt that would cause a reasonably careful and sensible person to pause or to hesitate or to refrain from acting upon a matter of the highest importance in his or her life.

(N.T. 12/4/96, 62). The trial court repeated this definition when asked for a definition by the jury. Reviewing the charge in light of the relevant Supreme Court precedent, we find no error. This charge did not reduce the Commonwealth's burden in any respect.

The Petitioner draws the court's attention to Cage v. Louisianna, supra, and Victor v. Nebraska, 511 U.S. 1 (1994). In Cage, the Supreme Court condemned a charge that defined reasonable doubt as requiring not just reasonable uncertainty, but "grave uncertainty." The Court found that "the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." Cage, at 41. Such is not the case, here. Additionally, in Victor, the other case cited by the Petitioner, the Court specifically approved of language similar to that given here: "a doubt that would cause a reasonable person to hesitate to act." Victor, at 20 (citing Holland v. United States, 348 U.S. 121, 140 (1954)). Moreover, we do not believe that the inclusion of the language "of the highest

5

importance of his or her life" changes our conclusion. In Holland, the Supreme Court approved of a charge that included a similar modifier in defining a reasonable doubt.

> [The trial judge] defined [reasonable doubt] as "the kind of doubt . . . which you folks in the more serious and important affairs of your own lives might be willing to act upon." We think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act, rather than the kind on which he would be willing to act. But we believe that the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some. A definition of a doubt as something the jury would act upon would seem to create confusion rather than misapprehension. Attempts to explain the term reasonable doubt do not usually result in making it any clearer to the minds of the jury and we feel that, taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury.

Holland, at 140.

In our case, the trial court defined reasonable doubt as something the jury would hesitate to act upon, as suggested by the Court, using the modifier accepted by the Court in Holland. Hence we find no error.

Furthermore, the Supreme Court cautioned in both Cupp and Victor that the challenged charge should not be considered in a vacuum. Rather, it must be considered in the context of the entire charge. Throughout the charge, the trial court emphasized the burden placed on the Commonwealth. The jury was instructed that the defendant was presumed innocent, that the fact that he was arrested could not be considered as evidence of guilt, and that there was no burden on the defendant to prove his innocence. (N.T. 12/4/96, 61-62). The judge further instructed the jury that mere suspicion or the fact that maybe the defendant did something is not sufficient to meet the Commonwealth's burden. (N.T. 12/4/96, 63). Therefore, we find no error in the instruction.

Having found that there was no basis upon which to object to the jury instruction, neither

trial nor appellate counsel cannot be found ineffective. Strickland v. Washington, 466 U.S. 668 (1984), requires that, in order to be considered ineffective, counsel's performance must deficient and the deficient performance must prejudice the defense. Id. at 687. Since the court found no error in the instruction, Carter cannot establish either prong of Strickland. See also Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000)("counsel cannot be deemed ineffective for failing to raise a meritless claim").

Finally, Carter presents a layered claim of counsel ineffectiveness based on trial counsel's failure to call police officer Mathis to impeach the testimony of Archie Moore. At trial, Archie Moore identified Carter as the man who shot William Fields. (N.T. 12/2/96, 139). He also stated that he had known Carter for many years, growing up in the same neighborhood and attending the same school. (N.T. 12/2/96, 138-39). At the time of the shooting, Officer Cassandra Mathis interviewed Moore. Despite Moore's admission that he knew Carter, Officer Mathis's investigation notes indicate that when Moore was interviewed, he gave a description of the shooter, but did not identify him by name. He merely said the gunman was in his teens and wearing "a hoodie." (Investigation Record dated 6/2/95).

Carter contends that counsel was ineffective for failing to call Officer Mathis to impeach Moore's identification testimony. Since Moore knew Carter from the neighborhood, he should have been able to give Officer Mathis his name at the time of the interview. Carter argues that questioning Officer Mathis about her interview notes would have impeached Moore's identification testimony.

As previously stated, in order to be found ineffective, counsel's representation must have been deficient and that deficiency must have prejudiced the defense. Strickland 466 U.S. at 687.

7

Here, the state courts concluded that Carter could not establish that counsel's failure to call Officer Mathis prejudiced the defense. Commonwealth v. Carter, 578 EDA 2001, at 9. We agree. During cross examination, Moore admitted that he had been questioned by the police at the scene and admitted that he failed to identify Carter by name, despite the fact that he had known Carter for 14 or 15 years. (N.T. 12/2/96, 171-72).

> Q: Police officers came on the scene and got out of the car and start [sic] asking did anybody see anything; is that right?
> A: That's right.
> Q: And you didn't tell any of those police officers that Fugi or Marlon Carter was the person you saw doing the shooting; is that right?
> A: Right then and there?
> Q: That's right, right then and there.
> A: No, I wasn't worried about that. . . .
> Q: Did you tell anybody there at that time right after it happened that the person who just shot your friend was a man named Fugi [Marlon Carter], somebody you have known for 14, 15 years?
> A: No.

(N.T. 12/2/96, 171-72). Counsel continued with this line of impeachment:

> Q: You said as soon as the shots were fired police came on the scene and [Carter] was seen running as soon as the police came on the block?
> A: Yes.
> Q: He was right there in front of them, in other words?
> A: No, not right in front of them.
> Q: Or on the sidewalk running?
> A: Yeah, he was on the sidewalk running.
> Q: When the police got out of the car did you say there goes the guy right there, running on the sidewalk there?
> A: I told them which way he went.

(N.T. 12/2/96, 172).

Counsel also focused the jury's attention on this inconsistency during his closing argument.

> [W]hen something has just happened and you have just seen it, and by now you

8

>know that according to [Moore] the person who was shot was his best friend, if he saw such a traumatic event, wouldn't you say to the officer Well, the person who did it is this description? The person who did it has this name. The person who did the crime lives around here. The person who did this crime is somebody I know because I have seen this person on numerous occasions and I have seen this person at this place. These are things you would say if you really saw something and you are really concerned about something that happened. But he doesn't say that.

(N.T. 12/4/96, 17).

After reviewing the trial transcript, we find it clear that counsel vigorously attacked Moore's identification testimony both during cross examination and in his closing argument. Having Moore admit that he failed to identify Carter at the scene of the crime when he was interviewed was exactly the information that could have been elicited from Officer Mathis. There was nothing more to be gained by the officer's testimony once the witness admitted the inconsistency. Hence, Carter has failed to establish that failing to call Officer Mathis prejudiced his defense in any way. Therefore, neither trial nor appellate counsel can be considered ineffective.

Therefore, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this _____ day of _____, 2002, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be DENIED. There has been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLON CARTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BEN VARNER, et al. | : | NO. 02-4381 |

**O R D E R**

HERBERT J. HUTTON, J.,

    AND NOW, this            day of                    , 2003, upon careful and independent consideration of the petition for writ of habeas corpus, and after review of the Report and Recommendation of United States Magistrate Judge Jacob P. Hart, IT IS ORDERED that:

    1. The Report and Recommendation is APPROVED and ADOPTED.

    2. The petition for a writ of habeas corpus is DENIED.

    3. There is <u>no</u> basis for the issuance of a certificate of appealability.

                                                                BY THE COURT:

                                                                  HERBERT J. HUTTON, J.